FORTEZA, PETITIONER AND APPELLANT, *v.* JIMÉNEZ, CONTESTANT AND APPELLEE.  ·

APPEAL from the District Court of Humacao in Proceedings for Dominion Title.

No. 1504.—Decided July 24, 1917.

DOMINION TITLE—CANCELLATION OF RECORD—THIRD PERSONS—PARTITION—CONVEYANCE—SALE BY SUCCESSION.—In a proceeding to establish dominion title the court cannot order the cancellation of a record in the names of third persons in the registry of property, and this proceeding is not the proper method for obtaining the partition of an estate, or to compel the joint heirs interested therein to execute a formal deed of conveyance to any portion thereof; but it does not follow from either proposition that the owner of a parcel of land segregated and sold by the members of a succession nearly twenty years prior to the filing of the proceedings for dominion title may not establish the facts showing such ownership and obtain his decree.

The facts are stated in the opinion.
*Mr. Rafael Arce* for the appellant.
*Mr. Francisco González* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Benjamín Forteza Segura appeals from a judgment holding that he had failed to establish dominion title to six and one-eighth *cuerdas* of land purchased by him from Antonio Jiménez Sicardó.

The fourth assignment of error is that the judgment is contrary to the evidence, and, in the view we take of the case, the others need not be considered.

On March 12, 1888, the Succession of Manuel Jiménez Córdova, to. wit, Manuel, represented by his widow, Eladia Cruz, Gertrudis, Agustina, Pedro, Francisco, José, Juan, Antonio, Josefa Jiménez Sicardó and Providencia Lizardi, obtained a decree of possessory title to a tract of 365 *cuerdas* consisting of two parcels, one of 240 *cuerdas* and another of 125 *cuerdas*.

On September 20, 1889, Providencia Lizardi Jiménez died without issue and her share in the estate passed to her father, Ignacio Lizardi, who also died a few months later.

Appellee insists that the interest so acquired by the father was a defeasible estate subject to possible reversion at his death, by virtue of certain conceivable circumstances not shown to exist in the instant case, under the peculiar provisions of article 811 of the Spanish Civil Code in force at that time; but in view of the facts developed at the trial, we fail to perceive how that proposition, without more, can operate as a bar to the proceedings herein.

On December 10, 1889, Ignacio Lizardi executed a notarial instrument in favor of Pascual Borrás, claimed by appellant to be a deed of conveyance of the six and one-eighth *cuerdas* of land involved herein, commonly known and designated as "Maturí" which, although originally forming a part of the larger of the two parcels above mentioned, was in fact separated from the main body thereof by a river, and, it is alleged, had been actually segregated, allotted and delivered to Lizardi as representing *pro tanto* his interest in the estate.

The contention of appellee is that this six-*cuerda* parcel still forms a part of the larger tract of record in the name of the succession, which larger tract, it is said, has never been partitioned.

It does appear that on June 10, 1890, and by virtue of

the decree of ownership above mentioned, the 365 *cuerdas,* apparently heavily mortgaged, were recorded in the name of the succession, including Providencia Lizardi, at that time deceased, as a member thereof; and according to a marginal note and subsequent entries, the parcel of 240 *cuerdas* seems to have shrunk to 185 *cuerdas* or less, one estimate placing it as low as 169½ *cuerdas,* while the other of 125 *cuerdas* was segregated and recorded as a separate property which appears to have passed into other hands in satisfaction of a mortgage debt.

Indeed, putting aside for a moment the controversy as to the six and one-eighth *cuerdas,* it is substantially conceded by all concerned that of the original estate there remains only a trifle over fifty *cuerdas,* ten of which are in the possession of appellee, who pays taxes thereon and maintains that he holds the same under provisional delivery thereof pending final partition and settlement of the whole estate, while other members of the succession say that such delivery was in full and final settlement of appellee's entire interest in the estate and that the only matter pending is the execution of a formal instrument. The remaining forty-odd *cuerdas* are in the possession of the vendor of appellant, who still pays taxes thereon in the name of the succession and, according to the appellee, so holds the same, while appellant apparently understands that there are now no outstanding interests.

An extract from a notarial instrument executed on September 11, 1895, by Pascual Borrás in favor of Antonio Jiménez, vendor of petitioner, reads as follows:

"*First.*—That by virtue of an instrument executed before me on December 10, 1899, Ignacio Lizardi y Delgado ceded and transferred in favor of the appearing party, Borrás y Llacer, all the rights of action and hereditary rights belonging to the former by reason of the death of his legitimate daughter Providencia Lizardi y Delgado, who died in this city unmarried and without issue; and as the mother had died previously, the said daughter succeeded her in all her rights as a universal heir in six and one-eighth *cuer-*

*das* of land, *i. e.,* two hectares, eighty ares, and eighty-three centiares, situated in the ward of Cagüitas within this municipality; bounded on the east by lands of B. Borrás Hermanos; on the south by lands of Nicolás Muñoz and Encarnación Jiménez; on the north and west by the Cagüitas river which divides it from other lands belonging to the Jiménez Córdova Succession, *i. e.,* of Andrés García, which meadow is known as 'Maturí.' All of which so appears from said instrument of December 10, 1889, of which a first and true copy is obtained to be filed in the liquidating office of real estate taxes and conveyances to pay the public treasury the taxes appertaining thereto.

"*Second.*—As free from all liens and in the same manner the aforesaid six and one-eighth *cuerdas* were allotted, the appearing party, Mr. Borrás, has entered into an agreement with Jiménez Sicardó for the cession and actual transfer of his vested rights of action and interest in the above-described property; and carrying into effect said agreement they execute this present public document in terms as follows: That Mr. Borrás y Llacer cedes, renounces and transfers to Antonio Jiménez Sicardó, his heirs and assigns, all his rights and interest in said land, subrogating him in his own stead and rights, degree, and priority, with full power to do and perform all acts arising out of this cession, which is made for the sum of $1,535, current money, a sum which the grantor hereby acknowledges to have already received from the grantee, in whose favor he executes a formal discharge for that amount; and I, the notary public, state for the information of the parties that the receipt of the price of the cession having been acknowledged, as it is acknowledged, the land remains free from any liability whatever, even though it be proven hereafter that there was no delivery of all or part of the consideration.

"*Third.*—It is hereby agreed if within the period of one year from this date, to expire on September 11, 1896, Mr. Borrás should return to Mr. Jiménez Sicardó the sum of $1,535, which is the consideration for this cession, the latter will be bound to restore to the former the parcel of land hereby ceded; otherwise this present cession shall become absolute.

"*Fourth.*—It is also hereby agreed that during the period fixed for reconveyance Mr. Jiménez Sicardó will permit Mr. Borrás to cart his sugar canes through the said land without any objection whatever."

The earlier document was not copied into the record, but

is referred to in the statement of the case as one of the items
of documentary evidence, and is described somewhat vaguely
as follows:

"No. 235. INDENTURE of cession and transfer dated December 10,
1889, executed by Ignacio Lizardi Delgado in favor of Pascual Bo-
rrás y Llacer, before Notary Public Francisco Jiménez Prieto.  In
that instrument the inheritance of Providencia Lizardi as successor
of Ana Jiménez Sicardó is transferred to Borrás Llacer, such heredi-
tary interest being limited to six and one-eighth *cuerdas* of land
in the ward of Cagüitas, Caguas.

"It appears from the said instrument that Lizardi, as the heir
of his daughter Providencia, limited the sale to Borrás to the said
six and one-eighth *cuerdas,* stating that he had transferred the re-
mainder of his hereditary interest to Agustina Jiménez Sicardó."

A full rehearsal of the voluminous history of individual
undivided interests as told by the registry of property would
seem superfluous.  In passing, however, we may mention for
what it is worth a somewhat curious circumstance.  On May
26, 1910, the Municipal Judge of Caguas entered a decree
of possessory title to 78 *cuerdas* of the 185-*cuerda* tract in
favor of Juan Arén as vendee of Manuel Soto Quiñones, who,
it was alleged, had acquired the parcel in question from the
Jiménez Córdova Succession, and record was refused for the
reason that certain members of the succession mentioned in
the registry of property, including Providencia Lizardi, did
not appear to have been represented in the transfer of title.
The tenth inscription is a record of this decree—

"*  *  *  the defect causing the denial of the inscription having
been cured through the citation of the following persons: Eladia
Cruz Jiménez, as representing her deceased husband, Manuel Jimé-
nez Sicardó; Fernando Jiménez y Jiménez, as assignee of the in-
terest of Francisco Jiménez Sicardó; and Pedro Jiménez Sicardó,
Antonio Jiménez Sicardó, in his own right and as assignee of the
interest of Juan Jiménez Sicardó, Josefa Jiménez Sicardó, José Ji-
ménez Sicardó and the O'Neill-Jiménez brothers, children and sole
heirs of Gertrudis Jiménez Sicardó, who were summoned also as
representing the interest of Agustina Jiménez Sicardó and Provi-

dencia Lizardi, both deceased; and the municipal judge of this city, M. F. Chiqués, having entered an order on the tenth instant affirming the order of the twenty-sixth of May ultimo, whereby the possession of the said parcel of 78 *cuerdas* out of this property was adjudged to have been established in favor of Manuel Castiñeira Arén.''

If what passed from Lizardi to Borrás and from Borrás to Antonio Jiménez, vendor of petitioner-appellant herein, was nothing more than an assignment of an undivided interest in the Jiménez Córdova estate, that circumstance seems to have been entirely overlooked by all the parties in interest in the proceeding last above mentioned.

The testimony for petitioner shows without substantial contradiction that in 1899 Ignacio Lizardi was bedridden with a cancer of the face and in urgent need of money for an operation; that in order to provide the necessary funds the members of the succession, or those immediately accessible, assuming to act for all, agreed to segregate and deliver to him the parcel of land known as ''Maturí'' upon the express understanding that he was to dispose of the same forthwith for cash; that Borrás consulted with the members present before consummating the purchase and understood that he was buying the land; that shortly thereafter the situation was explained to such members as were not present at the time, who expressly ratified and approved all that had been done; and that since then, first Borrás, later his vendee, Antonio Jiménez, and more recently petitioner, have remained in open, notorious, peaceful and uninterrupted possession and enjoyment of the parcel in question as owners thereof and paying the taxes thereon.

The testimony also shows that for some time prior to the acquisition of this property by petitioner, appellee sought by various means to induce, if not to oblige by force of circumstances, Antonio Jiménez to sell the same to him. Perhaps the statement most favorable to appellee on this point

is that of his attorney, who took the stand and by way of surrebuttal testified as follows:

"As some testimony has been given regarding a transaction entered into between Dr. Jiménez and Mr. Antonio Jiménez Sicardó, I wish to state that I participated in that matter together with Mr. Fernando Jiménez, and it was required, better to say, the interest represented by the 'Maturí' farm was to be bought provided that the money to be paid by Dr. Jiménez should be secured by a mortgage, in order that the title to the said farm might be cured, and upon the understanding that the title having been cured by Mr. Antonio Jiménez Sicardó, with the consent of the other parties interested in the Jiménez Córdova estate, then the purchaser, Mr. Fernándo Jiménez, would cancel and release said mortgage. These were the terms of the attempted transaction. That they did not call upon the other joint owners in order to make that contract; no agreement was reached, but it was understood that if the deal should be consummated the approval of the other joint owners would be obtained."

About the most that can be said from appellee's point of view, therefore, is that he recognized certain technical defects in the title to the six-*cuerda* piece and wanted to be sure that there would be no opposition to perfecting the same after acquisition by him. We think it is shown to be reasonably probable that if Antonio Jiménez had sold to appellee on the terms proposed by him, there would have been no difficulty in obtaining a decree of dominion title in the name of appellee.

The trial judge apparently does not question the veracity of the witnesses for petitioner, but was of the opinion that because the original tract of 185 *cuerdas* was of record in the name of the succession, and because no formal partition of the estate had ever been made, petitioner had mistaken his remedy and the present proceeding could not prosper.

It is true that in a proceeding to establish dominion title the judge cannot order the cancellation of a record in the name of third persons in the registry of property. *Toro* v. *Registrar, ante,* p. 438. We also agree with appellee and

with the trial court that this is not the proper method for obtaining the partition of an estate, or to compel the joint heirs interested therein to execute a formal deed of conveyance to any portion thereof. But it does not follow from either proposition that the owner of a parcel of land segregated and sold by the members of a succession nearly twenty years prior to the filing of the proceedings for dominion title may not establish the facts showing such ownership and obtain his decree.

The judgment appealed from must be reversed and in lieu thereof a decree should be entered in favor of appellant adjudging him to be the owner of the property described in the petition.

*Reversed and substituted.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.